**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GERALDINE HUNTER-McLEOD,**<br>        **Plaintiff,** | **CIVIL ACTION** |
|         **v.** | |
| **DOLLAR GENERAL,**<br>            **Defendant.** | **NO.  13-3113** |

**DuBois, J.**                                    **September 16, 2014**

**M E M O R A N D U M**

**I.        INTRODUCTION**

This case arises out of injuries allegedly sustained by plaintiff Geraldine Hunter-McLeod in a slip and fall accident on October 19, 2012, at a Dollar General store in Philadelphia, Pennsylvania.  Surveillance cameras captured plaintiff's entrance into the store and her accident. In her Complaint, plaintiff asserts a claim of negligence against defendant Dollar General. Plaintiff has also provided the expert report of Vincent J. DiStefano, M.D. in support of her claimed injuries.

Presently before the Court are defendant's Motion in Limine to Exclude All Evidence of Subsequent Remedial Measures Contained in Surveillance Video and defendant's Motion in Limine to Preclude Plaintiff's Expert Vincent J. DiStefano, M.D., from Offering Certain Evidence at Trial.  For the reasons stated below, defendant's Motion in Limine to Exclude All Evidence of Subsequent Remedial Measures Contained in Surveillance Video is granted, and defendant's Motion in Limine to Preclude Plaintiff's Expert Vincent J. DiStefano, M.D., from Offering Certain Evidence at Trial is granted in part and denied in part.

## II.     BACKGROUND

On the morning of October 19, 2012, plaintiff entered a Dollar General store located at 600 E. Chelton Ave., Philadelphia, PA 19144.  (Mem. Law Supp. Def.'s Mot. to Exclude Evidence of Subsequent Remedial Measures ("Def.'s Mem. Law") 1.)  Upon entering the store, plaintiff slipped and fell in the vestibule.  ( Id. at 2.)  Approximately three minutes later, Dollar General employee Patty Reed placed two pieces of cardboard on the floor in the area where plaintiff fell.  (Id.)  Store manager Maceo Randall then almost immediately removed the cardboard and "adjusted and/or twisted" the black entrance mat into a different position.  (Id.)  About ten minutes later, an EMS crew arrived at the scene, and plaintiff was taken to Einstein Medical Center in an ambulance.  (Id.)  Plaintiff alleges that she suffered "severe physical pain, aches, fear, mental anguish, humiliation, inconveniences, and loss of life's pleasures" as a result of the fall.  (Compl. ¶ 15.)  Video surveillance footage captured the entire incident and has been preserved.  (Def.'s Mem. Law 1.)

Defendant seeks to exclude the video evidence showing the placement and removal of cardboard pieces on the floor in the area where plaintiff fell and the adjustment of the entrance mat on the ground that such evidence constitutes subsequent remedial measures, which is inadmissible under Federal Rule of Evidence ("F.R.E.") 407.  In addition, defendant seeks to preclude plaintiff's expert, Dr. DiStefano, from offering causation opinion and testimony on the opinions of plaintiff's treating physicians on the ground that they do not meet the standards under applicable law.

The Court addresses each motion in turn.

**III.   DEFENDANT'S MOTION TO EXCLUDE ALL EVIDENCE OF SUBSEQUENT REMEDIAL MEASURES**

    **A.  <u>Legal Standard</u>**

F.R.E. 407 provides as follows:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures.

Evidence of subsequent remedial measures is generally excluded under F.R.E. 407 based on public policy grounds, to encourage post-accident repairs and safety improvements.  <u>Kenny v. Se. Pennsylvania Transp. Auth.</u>, 581 F.2d 351, 356 (3d Cir. 1978) (citations omitted); <u>Stecyk v. Bell Helicopter Textron, Inc.</u>, 295 F.3d 408, 415 (3d Cir. 2002) (citing <u>Petree v. Victor Fluid Power, Inc.</u>, 831 F.2d 1191, 1198 (3d Cir.1987) ("<u>Petree I</u>")).  However, F.R.E. 407 authorizes the admission of such evidence for another purpose as to which "a genuine issue is present or for impeachment."  <u>Petree I</u>, 831 F.2d at 1198.  The U.S. Court of Appeals for the Third Circuit has recognized the impeachment exception to F.R.E. 407.  <u>See</u> <u>Complaint of Consolidation Coal Co.</u>, 123 F.3d 126, 136 (3d Cir. 1997) ("It can be reversible error to exclude evidence of a subsequent remedial measure when it is offered entirely for impeachment purposes."); <u>Kenny</u>, 581 F.2d at 356.

While "the trial judge should be afforded a healthy deference in preserving both the rule and the exception," the Third Circuit has cautioned against permitting the "other purposes" exception to "swallow" the rule.  <u>Stecyk</u>, 295 F.3d at 416 (citing <u>Petree v. Victor Fluid Power,</u>

Inc., 887 F.2d 34, 39 (3d Cir.1989)); Complaint of Consolidation Coal Co., 123 F.3d at 136 ("Yet a court must interpret the impeachment exception to Rule 407 circumspectly. . . ."); see also Harrison v. Sears, Roebuck & Co., 981 F.2d 25, 31 (1st Cir. 1992) ("Rule 407's impeachment exception must not be used as a subterfuge to prove negligence or culpability.").

Evidence of subsequent remedial measures for impeachment purposes "must contradict the witness's testimony directly" to be admissible.  Complaint of Consolidation Coal Co., 123 F.3d at 137; see e.g., Kelly v. Crown Equip. Co., 970 F.2d 1273, 1278 (3d Cir. 1992) (evidence of subsequent design changes inadmissible where expert testified that previous design was excellent and proper, not that it was the best or only possible design); Anderson v. Malloy, 700 F.2d 1208, 1211-12 (8th Cir.1983) (evidence of subsequent remedial measures admitted to impeach statements that defendants had done everything necessary for a secure motel and that chain locks and peep holes would not be successful, when defendants took additional security measures after incident and installed those devices).

## B.  Discussion

At the outset, the Court notes that there is no objection to showing video surveillance footage of plaintiff's fall itself to the jury.[1]  It is defendant's argument that all evidence of

---

[1] Defendant noted that it would like to present to the jury approximately nine minutes of video surveillance footage including the footage on Camera 2 from 9:33 a.m. until 9:40 a.m., which captures plaintiff's fall upon entering the store; on Camera 3 from 9:39:20 a.m. until 9:39:30 a.m., which shows plaintiff crossing a parking lot and entering the store with two other individuals prior to the accident; and on Cameras 2 and 3 from 10:02 a.m. through 10:04 a.m., which captures plaintiff getting up out of a chair and walking out of the store and into the ambulance outside.  (Def.'s Mot. to Exclude Evidence of Subsequent Remedial Measures ¶ 12-14.)  Plaintiff does not oppose defendant's request to show such video footage to the jury in her Response to defendant's Motion or Memorandum.  (Pl.'s Resp. to Def.'s Mot. to Exclude Evidence of Subsequent Remedial Measures ¶ 12-14.)  The Court grants defendant's request to admit the aforementioned surveillance video footage without prejudice to plaintiff's right to seek reconsideration if the videotape cannot be properly authenticated at trial or for any other appropriate reason.

subsequent remedial measures captured by store surveillance cameras — the placement and removal of cardboard pieces and turning of the entrance mat — is inadmissible under F.R.E. 407. Defendant contends that the evidence does not fall within the "other purpose" exception to the rule because neither the ownership of the premises nor the feasibility of the remedial measures in question is in dispute.  In the alternative, defendant argues that even if the evidence falls within the "other purpose" exception, it should be inadmissible under F.R.E. 403 because the probative value of the evidence is substantially outweighed by a danger of unfair prejudice.

Plaintiff agrees with defendant that the feasibility of the remedial measures is not in dispute.  It is plaintiff's argument that the video surveillance of Patty Reed placing cardboard on the floor is admissible under F.R.E. 407's "other purpose" exception to impeach Ms. Reed's testimony that there was no water on the floor of the store at the time of the accident.  Id. Furthermore, plaintiff asserts that the evidence should not be excluded under F.R.E. 403 because the surveillance of the store employees' actions supports the contention that water was in fact on the floor, which is one of the pivotal questions involved in plaintiff's negligence claim.

The Court concludes that the evidence of subsequent remedial measures taken by store employees captured by store surveillance video is inadmissible under F.R.E. 407 because the evidence does not "directly contradict" witness testimony.  See Complaint of Consolidation Coal Co., 123 F.3d at 137.  In her testimony, Ms. Reed repeatedly stated that there was no water on the floor at the time of the accident.  (Pl.'s Resp. to Def.'s Mot. to Exclude Evidence of Subsequent Remedial Measures ("Pl.'s Resp. to Def.'s Mot."), Ex. A, at 10-11.)  In response to counsel's question as to why she put the cardboard down, Ms. Reed testified, "It's just – I don't know why.  I just – I heard falling and I am thinking, okay I don't want nobody else to fall, but there was no water there."  Id. at 11.  When probed as to why she thought to put cardboard down,

whether "that was something she did," she replied, "No, it's just an instinct."  Id. at 10-11.

Significantly, the video surveillance does not show any evidence of water on the floor at the time

of plaintiff's accident, which would be a direct contradiction of Ms. Reed's testimony.  While it

could be argued that the video footage of her placing the cardboard on the floor where plaintiff

fell after the accident tends to refute Ms. Reed's statements, it does not directly contradict her

testimony, which is required for admissibility under F.R.E. 407.  Therefore, the evidence is

inadmissible.  In so ruling, the Court again notes that video footage of plaintiff's fall may be

shown to the jury.

Plaintiff has not responded to defendant's argument that video surveillance of Mr.

Randall removing the cardboard placed on the floor and "adjusting and/or twisting" the entrance

mat into a different position is inadmissible under F.R.E. 407.  The Court concludes that the

video surveillance footage showing these events is also inadmissible as evidence of subsequent

remedial measures under F.R.E. 407 because it does not directly contradict Ms. Reed's

testimony.

### C.  Conclusion

For the foregoing reasons, the Court concludes that all evidence of subsequent remedial

measures taken by Dollar General employees contained in the surveillance video is inadmissible

under F.R.E. 407.  In view of that determination, the Court need not reach the question of

whether the evidence is inadmissible under F.R.E. 403.  This ruling of the Court is without

prejudice to plaintiff's right to seek reconsideration if such evidence directly contradicts

testimony at trial or for any other appropriate reason.

**IV.     DEFENDANT'S MOTION TO PRECLUDE PLAINTIFF'S EXPERT FROM OFFERING CERTAIN EVIDENCE**

   **A.  Preclusion of Dr. DiStefano's Opinion that the Accident "May Have" Aggravated Plaintiff's Degenerative Arthritis of the Left Hip**

      **a.  <u>Legal Standard</u>**

Federal Rules of Evidence generally govern admissibility issues in cases in which, under the <u>Erie</u> Doctrine, state substantive law controls.  Wright & Miller, <u>Federal Practice & Procedure</u>, 29 Fed. Prac. & Proc. Civ. § 6263 (1st ed. 1997).  However, state law may control certain issues related to the admissibility of expert testimony when the law is classified as substantive.  <u>Id.</u>

Under Pennsylvania law, medical experts opining on causation must testify that defendant's actions caused plaintiff's condition with a reasonable degree of medical certainty.  <u>In re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 750 (3d Cir. 1994) (citations omitted).  The Third Circuit has concluded that the Pennsylvania rule is not purely a rule governing admissibility, but rather is a part of plaintiff's burden of proof.  35 F.3d at 752.   As such, the <u>Paoli Yard</u> court held that the Pennsylvania rule is substantive, is not in conflict with the Federal Rules of Evidence, and that it is applicable in federal court.  <u>Id.</u> at 751-52; <u>see</u> <u>Heller v. Shaw Indus., Inc.</u>, 167 F.3d 146, 153 n. 4 (3d Cir. 1999) ("In addition to the 'good grounds' requirement, in a diversity case such as this, state rules on the degree of certainty required of an expert's opinion apply.") (citing <u>Paoli</u>, 35 F.3d at 750–52); <u>Keller v. Feasterville Family Health Care Ctr.</u>, 557 F. Supp. 2d 671, 678 (E.D. Pa. 2008) (concluding expert testimony was admissible because process in formulating and applying opinion was reliable *and* expert stated such opinion to a reasonable degree of medical certainty) (emphasis added); <u>Soldo v. Sandoz Pharm. Corp.</u>, 244 F. Supp. 2d 434, 526

(W.D. Pa. 2003) ("Opinions merely expressing 'possibilities' do not suffice to support the admissibility of expert testimony.").

In clarifying the "reasonable certainty" standard, the Pennsylvania Superior Court stated that "[e]xpert testimony is admissible when, taken in its entirety, it expresses reasonable certainty that the accident was a substantial factor in bringing about the injury." Kravinsky v. Glover, 396 A.2d 1349, 1356 (1979). The Superior Court further explained that "an expert fails this standard of certainty if he testifies that the alleged cause possibly, or could have[,] led to the result, that it could very properly account for the result, or even that it was very highly probable that it caused the result." 396 A.2d at 1356 (citations omitted) (internal quotation marks omitted).

   b.  **Discussion**

The opinion at issue is stated in Dr. DiStefano's March 13, 2014 medical report as follows:

> I believe her slip and fall caused an aggravation of preexisting degenerative disc [sic] made of x-ray findings which revealed degenerative arthritis of the left hip. This was not caused by the fall, but may have been aggravated.

(Def.'s Mot. to Preclude Certain Expert Testimony, Ex. A, at 4-5.) Defendant argues that the Pennsylvania rule regarding the essentials of expert witnesses' proffered testimony applies and that Dr. DiStefano's opinion that the accident "may have" caused an aggravation of plaintiff's degenerative arthritis of the left hip is insufficient under the law and should be excluded.[2] In response, plaintiff asserts that Dr. DiStefano's opinion should be admitted because it was

---

[2] Dr. DiStefano's report includes additional diagnoses and opinions about plaintiff's condition. Specifically, Dr. DiStefano details plaintiff's current complaints and observations made in conducting a physical examination of plaintiff. (Def.'s Mot. to Preclude Certain Expert Testimony, Ex. A, at 2-3.) Dr. DiStefano also states, "I believe her current complaints are due to her injury of 10/19/12. Her prognosis is guarded." (Id. at 5.) Defendant has not objected to those parts of Dr. DiStefano's medical report, and the Court does not address it.

rendered to a reasonable degree of medical certainty.  That position is solely based on Dr. DiStefano's statement at the end of his medical report that all of his "opinions have been rendered with a reasonable degree of medical certainty."  (Id. at 5.)

The Court concludes that Dr. DiStefano's opinion that plaintiff's accident "may have" aggravated plaintiff's degenerative arthritis of the left hip is inadmissible.  The first sentence, considered alone, may have passed muster under the Pennsylvania rule.  However, the second sentence substantially qualifies the first, and without more, renders the opinion inadmissible. Although Dr. DiStefano concludes his report with the statement that his opinions "have been rendered with a reasonable degree of medical certainty," that does not cure the lack of certainty of Dr. DiStefano's opinion regarding the alleged causal link between plaintiff's accident and an aggravation of her degenerative arthritis of the left hip.  (Id.)  Dr. DiStefano's opinion falls short of Pennsylvania's "reasonable certainty" standard requiring an expert to testify "that in his professional opinion the result in question came from the cause alleged."  Menarde v. Philadelphia Transp. Co., 103 A.2d 681, 684 (1954).[3]

---

[3] Although not raised by the parties, the Court further notes that this opinion does not pass muster under F.R.E. 702 either as it does not "assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  As Daubert explained, "[t]his condition goes primarily to relevance."  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 (1993) (citations omitted) (internal quotation marks omitted).  A trier of fact will not be assisted by an expert opinion that is overly speculative or hedged.  See Tamraz v. Lincoln Elec. Co., 620 F.3d 665, 670-71 (6th Cir. 2010) (speculative nature of medical expert's testimony as to the causal relationship between plaintiff's injury and the subject accident rendered that opinion inadmissible).  Dr. DiStefano's opinion that plaintiff's degenerative arthritis of the left hip "may have been aggravated" by the accident does not make the existence of such a causal relationship more or less likely.  Accordingly, the opinion is too tentative to assist the jury in making a determination on causation.

### B.  Preclusion of Dr. DiStefano's Testimony Regarding the Medical Opinions of Plaintiff's Treating Physicians

#### a.  <u>Legal Standard</u>

F.R.E. 703 provides as follows:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

F.R.E. 703 permits experts to rely on data from three distinct sources: 1) firsthand observation; 2) admitted evidence; and 3) facts outside the record and not personally observed, but of the kind that experts in their field reasonably rely upon in forming opinions.  <u>Werth v. Makita Elec. Works, Ltd.</u>, 950 F.2d 643, 648 (10th Cir. 1991); <u>Stecyk</u>, 295 F.3d at 414 ("If the facts are of the type 'reasonably relied upon' by experts in the particular field in forming opinions or inferences upon a subject, the facts or data need not be independently admissible in evidence.") (citations omitted).

Thus, "expert opinion which relies upon the information or opinion of others is acceptable, provided it is the sort of opinion reasonably relied on by experts in the relevant area of expertise."  <u>Bouygues Telecom, S.A. v. Tekelec</u>, 472 F. Supp. 2d 722, 728 (E.D.N.C. 2007) (citing <u>Dura Automotive Sys. of Indiana, Inc. v. CTS Corp.</u>, 285 F.3d 609, 612-14 (7th Cir.2002)).  Medical experts often rely on the testing and opinions of other medical professionals in rendering their own diagnoses.  <u>See</u> Fed. R. Evid. 703's Advisory Committee Notes (approving of physicians' practice of basing their diagnoses on "reports and opinions from nurses, technicians and other doctors" and noting that a physician's "validation [of such evidence], expertly performed and subject to cross-examination, ought to suffice for judicial

purposes"); In re Wagner, No. 6-CV-01026, 2007 WL 966010, at *4 (E.D. Pa. Mar. 29, 2007) (An expert may rely on "a mix of objective data and subjective analysis from another expert to opine about [plaintiff's] physical status at the time of the accident, and to create an admissible report."). However, even if an expert opinion itself is admissible, F.R.E. 703 prohibits the proponent of the opinion from presenting to the jury otherwise inadmissible data upon which the opinion is based, unless its probative value substantially outweighs its prejudicial effect. Fed. R. Evid. 703.

Importantly, F.R.E. 703 does not authorize experts to merely "parrot" the ideas and opinions of other experts or individuals. In re Wagner, 2007 WL 966010, at *4. "[W]hile Rule 703 was intended to liberalize the rules relating to expert testimony, it was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." Loeffel Steel Products, Inc. v. Delta Brands, Inc., 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005); Bouygues Telecom, S.A., 472 F. Supp. 2d at 729 (expert not permitted to merely adopt and incorporate verbatim another expert's opinion).

### b. **Discussion**

Defendant anticipates that Dr. DiStefano will merely re-state the medical opinions of plaintiff's treating physicians, thereby insulating them from cross-examination in violation of F.R.E. 703. It is defendant's position that Dr. DiStefano should be precluded from "regurgitating" the opinions of the physicians who treated plaintiff.

In response, plaintiff contends that Dr. DiStefano examined plaintiff and reviewed her medical records, which included the notes, diagnostic test results, and opinions of plaintiff's

treating physicians, to render his own opinion based on that information.  Plaintiff also notes that doctors customarily rely on the diagnoses and opinions of other doctors as Dr. DiStefano has.

In his medical report, Dr. DiStefano includes a list of tests, diagnoses, and opinions rendered by plaintiff's treating physicians.  (Def.'s Mot. to Preclude Certain Expert Testimony, Ex. A, at 3-4.)   He also details plaintiff's current complaints and observations from an independent physical examination of plaintiff on March 13, 2014.  (Id. at 2-4.)  While plaintiff has submitted the medical report in support of her claimed injuries, Dr. DiStefano has not been deposed.  Thus, the Court cannot rule on the propriety of specific questions that plaintiff intends to ask Dr. DiStefano on the present state of the record.  Instead, the Court rules that Dr. DiStefano may be called as a witness at trial and that plaintiff, in questioning him, shall be guided by the applicable law set forth in this Memorandum.  This ruling is subject to defendant's right to object to any questions or other evidence deemed to be inadmissible.

### C.  Conclusion

For the aforementioned reasons, the Court grants that part of defendant's Motion to Preclude Plaintiff's Expert Vincent J. DiStefano, M.D., from Offering Certain Evidence at Trial which seeks to preclude Dr. DiStefano's opinion that the accident in question "may have" aggravated plaintiff's degenerative arthritis of the left hip and denies the Motion with respect to his testimony on the medical opinions of plaintiff's treating physicians, subject to defendant's right to object to any questions or other evidence deemed to be inadmissible.  These rulings are without prejudice to the parties' right to seek reconsideration if warranted by the evidence presented at trial or for any other appropriate reason.

An appropriate order follows.